OPINION OF THE COURT
 

 Wesley, J.
 

 New York Pattern Jury Instruction 4:67 provides that, in determining whether an insurer has acted in bad faith in refusing to settle a claim on behalf of its insured, the jury may
 
 *651
 
 consider a number of factors, including “whether [the insurer] had informed [the insured] of the amount for which [the opposing party] was prepared to settle his claim and of course the negotiations with [the opposing party].” This case requires us to examine the propriety of this aspect of the PJI charge. We hold that, on the facts of this case, the trial court’s charge was appropriate. We therefore reverse the order appealed from and reinstate the judgment in plaintiff’s favor.
 

 I.
 

 David Smith was 14 years old when he was injured while attempting to cross a street outside a bagel shop near his Staten Island home. Smith’s view of oncoming traffic was blocked by a delivery truck that was parked in front of the store. As Smith stepped into the street, he was struck by an oncoming automobile driven by Frank Primiani. Smith spent the next eight days in a coma, and suffered serious and permanent physical injuries. Smith sued both Primiani and Jay Brody, the driver of the delivery truck. Smith alleged that Brody was negligent in parking the truck with the rear of the vehicle extending into the street thereby blocking his view of oncoming traffic. The trial was bifurcated, and the jury returned a verdict in the liability phase finding Smith and Brody each 50% at fault. Defendant General Accident was Brody’s insurer, with coverage of $500,000. At that stage, General Accident did not reach a settlement with Smith. On the damages phase of the trial, the jury returned a verdict of $1.1 million. Brody thereafter assigned any cause of action which he might have against General Accident to Smith, and plaintiff’s commenced this action against the insurer for bad faith refusal to settle.
 

 The gravamen of the bad faith claim is that, once the jury had returned its verdict finding Brody 50% liable, Smith’s injuries were so extensive that it was highly likely that a jury would return a verdict in the damages phase of the trial in excess of the policy limits. After the jury returned its verdict in the liability phase of the trial, the most that the carrier ever offered to settle the claim was $300,000, although defendant’s own senior claim representatives indicated in an internal memorandum that a jury could realistically return a verdict of $450,000. Plaintiffs produced evidence at the bad faith trial tending to show that the carrier had not undertaken diligent efforts to ascertain the extent of Smith’s injuries, which included fractures of the nose, skull, rib and pelvis; a collapsed lung; injuries to the eye requiring later surgery; and a brain
 
 *652
 
 injury which caused an eight-day coma and permanent cognitive impairment. Brody also testified that the carrier did not keep him informed of its settlement negotiations with Smith, including an offer by Smith to settle for the policy limits, despite the fact that defendant’s own claims manual instructed its representatives to keep an insured informed of settlement negotiations in cases where liability may exceed the policy limits.
 

 The trial court instructed the jury that, in assessing the insurer’s bad faith, it could consider a number of factors, including: the probability that the jury in the underlying action would find for Smith; the probability that a verdict in the underlying action would exceed the monetary limit of the insurance policy; whether General Accident had properly investigated the claim; the extent of General Accident’s attempts to settle the claim; settlement recommendations made by General Accident’s attorney; the relative financial risk of General Accident and Brody; and
 
 “whether [General Accident] had informed Jay Brody of the amount for which David Smith was prepared to settle his claim and of course the negotiations with David Smith.”
 

 The insurer objected to the last portion of the charge, arguing that it was inappropriate for the jury to consider whether General Accident had kept its insured informed of the settlement negotiations, because an insurer has no legal duty to do so. The trial court rejected this argument. The jury returned a verdict in favor of plaintiffs finding that General Accident had acted in bad faith. Defendant’s motion to set aside the verdict was denied by the trial court.
 

 The Appellate Division reversed the judgment and ordered a new trial, holding that “the charge incorrectly instructed the jury that the appellant had an obligation to advise its insured as to the progress of settlement negotiations” (244 AD2d 402, citing
 
 Knobloch v Royal Globe Ins. Co.,
 
 38 NY2d 471, 479). Plaintiffs have appealed to this Court as of right pursuant to CPLR 5601 (c) upon stipulating to judgment absolute should the Appellate Division order be affirmed. We now reverse and reinstate the Supreme Court judgment in plaintiff’s favor.
 

 II.
 

 It is well settled that an insurer may be held liable for damages to its insured for the bad faith refusal of a settlement offer
 
 (Soto v State Farm Ins. Co.,
 
 83 NY2d 718;
 
 Pavia v State Farm Mut. Auto. Ins. Co.,
 
 82 NY2d 445). This stems from the
 
 *653
 
 general principle that a covenant of good faith and fair dealing is implied in all contracts, including insurance policies, as well as a recognition of the control an insurer maintains over claims against an insured
 
 (Pavia v State Farm Mut. Auto. Ins. Co., supra; Gordon v Nationwide Mut. Ins. Co.,
 
 30 NY2d 427). When confronted with a settlement offer within the policy limits, an inherent conflict arises between the insurer’s desire to settle the claim for as little as possible, and the insured’s desire to avoid personal liability in excess of the policy limits.
 

 In order to establish bad faith in failing to settle a claim, the insured must show that “the insurer’s conduct constituted a ‘gross disregard’ of the insured’s interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer”
 
 (Pavia v State Farm Mut. Auto. Ins. Co., supra,
 
 82 NY2d, at 453). The issue here is whether the failure of the insurer to keep its insured informed of settlement negotiations can constitute some evidence of bad faith, as the trial court instructed the jury. We hold that it can.
 

 The majority of jurisdictions hold that evidence of an insurance company not informing its insured of settlement negotiations is a factor which the jury is entitled to consider in a bad faith claim
 
 (see, e.g., Commercial Union Ins. Co. v Liberty Mut. Ins. Co.,
 
 426 Mich 127, 393 NW2d 161;
 
 Brown v Guarantee Ins. Co.,
 
 155 Cal App 2d 679, 319 P2d 69;
 
 see also,
 
 Richmond,
 
 An Overview of Insurance Bad Faith Law and Litigation, 25
 
 Seton Hall L Rev 74, 97-98; McGuire,
 
 Bad Faith, Excess Liability and Extra Contractual Damages: Counsel for the Excess Carrier Looks at the Issues,
 
 72 U Det Mercy L Rev 49, 71 [“if an insurer is unable to obtain a settlement within policy limits, it should still communicate the higher settlement offer to the insured, since the insured might be willing to make up the difference. In relation to the insured, the insurer acts in a capacity similar to a trustee and must make full disclosure of matters that should concern the insured. Some courts regard an insurer’s failure to inform the insured of all settlement offers as evidence of bad faith”]; Ashley, Bad Faith Actions: Liability and Damages § 3:09 [1994]).
 

 This Court has never expressly ruled on the propriety of the instruction at issue, although it is consistent with the recommendations found in the New York Pattern Jury Instructions
 
 (see,
 
 PJI 4:67). We have previously approved a number of the factors included in the PJI charge, including “the plaintiff’s likelihood of success on the liability issue in the underlying ac
 
 *654
 
 tion, the potential magnitude of damages and the financial burden each party may be exposed to as a result of a refusal to settle * * * the insurer’s failure to properly investigate the claim and any potential defenses thereto [and] the information available to the insurer at the time the demand for settlement is made”
 
 (Pavia v State Farm Mut. Auto. Ins. Co., supra,
 
 82 NY2d, at 454-455). This list was not intended to be exclusive, however. We expressly noted in
 
 Pavia
 
 that courts could also consider “any other evidence which tends to establish or negate the insurer’s bad faith in refusing to settle”
 
 (id.,
 
 at 455). Failing to communicate the status of settlement offers and negotiations properly falls into the “other evidence” category, under the circumstances presented here.
 

 As the insurer notes, this Court has indicated that, while it may contractually bind itself to do so, an insurer ordinarily, has no unqualified duty to inform its insured of settlement offers such that the failure to do so establishes liability as matter of law
 
 (see, Knobloch v Royal Globe Ins. Co., supra,
 
 38 NY2d, at 479;
 
 Best Bldg. Co. v Employers’ Liab. Assur. Corp.,
 
 247 NY 451;
 
 Streat Coal Co. v Frankfort Gen. Ins. Co.,
 
 237 NY 60). The Appellate Division incorrectly relied on
 
 Knobloch v Royal Globe Ins. Co. (supra),
 
 in holding that the charge was erroneous.
 
 Knobloch
 
 expressly refused to rule on the propriety of a charge which included as an element whether the insurer had advised the insured of settlement negotiations; no exception had been taken to the charge in that case
 
 (Knobloch v Royal Globe Ins. Co., supra,
 
 38 NY2d, at 477). The Court specifically stated that “we leave that issue [whether the charge was legally correct] for address in another case, intending here to intimate no view with respect to the charge given in this case.”
 
 (Id.,
 
 at 477-478.)
 

 The
 
 Knobloch
 
 rationale included the proposition that the carrier was not “obligated to consult its insured in regard to settlement”
 
 {id.,
 
 at 479). However, whether or not the insurer has an obligation to inform its insured of settlement offers and negotiations as a matter of either tort or contract law is not determinative. If an insurer acting in good faith would ordinarily keep its insured informed of settlement negotiations then the failure of an insurer to do so could raise the inference that the insurer is acting in bad faith by failing to provide its insured with settlement information, regardless of the insurer’s legal obligations.
 

 Plaintiffs in this case produced evidence showing that the practice in the insurance industry is for insurers to keep an
 
 *655
 
 insured abreast of settlement negotiations and that this particular insurer instructed its representatives to notify an insured of settlement negotiations when liability may exceed coverage. The failure by the insurer to follow an industry practice or its own standard is relevant to resolution of the bad faith issue. Significantly, this was only one of eight factors which the trial court correctly instructed the jury that it should consider in assessing the insurer’s bad faith. This is not to say that this evidence established bad faith, or even that such evidence alone would be sufficient to establish a prima facie case of bad faith. However, it was evidence which the jury could appropriately consider along with other evidence of the defendant’s bad faith.
 

 We have considered all other remaining contentions and conclude that they are without merit.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Titone taking no part.
 

 Order reversed, etc.