■ CARL REDCROSS et al., as Parents and Guardians of TRAVIS REDCROSS, an Infant, Plaintiffs, v AETNA CASUALTY & SURETY COMPANY, Appellant, and MIRIAM SOLOMON et al., Respondents. [688 NYS2d 817] —Spain, J. Appeal from an order

of Supreme Court (Canfield, J.), entered September 18, 1998 in Albany County, which, *inter alia*, granted a cross motion by defendants Miriam Solomon and Herman Solomon for summary judgment on their cross claim against defendant Aetna Casualty & Surety Company.

In July 1986, Donna Burkart (hereinafter Burkart) and her six-year-old brother, Travis Redcross (hereinafter Travis), both traveling by bicycle, attempted to cross Western Avenue in the Town of Guilderland, Albany County. Riding in a child seat on the back of Burkart's bicycle was her 11-month-old daughter, Amanda. When the traffic light facing them turned green, the cyclists proceeded to cross the road and were hit by a vehicle driven by defendant Herman Solomon and owned by his wife, defendant Miriam Solomon. Burkart and Travis sustained serious and permanent injuries and Amanda sustained minor injuries. The underlying facts of the accident, which are not in dispute on this appeal, are more thoroughly described in earlier decisions of this Court (*see*, 146 AD2d 125; 241 AD2d 787, *lv denied* 91 NY2d 801).

The Solomons were insured by defendant Aetna Casualty & Surety Company under a policy with limits of $100,000 per person and a maximum of $300,000 for each occurrence. In December 1986, Burkart, individually and as parent and guardian of Amanda, and plaintiffs, derivatively and as parents and guardians of Travis, commenced an action (hereinafter the personal injury action) against the Solomons alleging that serious injuries were suffered by Burkart, Travis and Amanda. The complaint demanded damages in excess of $10 million.

Early settlement discussions revealed that plaintiffs and Burkart would be willing to settle the personal injury action as a "package deal" for the full per occurrence policy limit of $300,000. Plaintiffs maintained that they were entitled to $100,000 on their derivative claim premised upon Travis' injuries, and that Travis was also entitled to an additional $100,000 on his individual claim. Aetna at all times was willing to pay $100,000 for the serious injuries sustained by Burkart and $100,000 for the serious injuries sustained by Travis. However, Aetna concluded that plaintiffs' derivative claim was not compensable as a separate bodily injury under the policy, i.e., separate from the damages suffered by Travis. Additionally, it was Aetna's position that Amanda did not sustain serious injuries and, thus, there was no basis upon which to offer her a settlement under the policy. Consequently, Aetna asserted that its total liability under the policy was $200,000.

Thereafter, plaintiffs commenced this action against Aetna seeking a declaration that the $100,000 per person liability limit for bodily injury contained in Aetna's insurance policy issued to the Solomons applied separately to Travis' own bodily injury claims and to plaintiffs' derivative claim. The Solomons were also named as defendants. In July 1988, Supreme Court (Prior, Jr., J.) concluded that plaintiffs' derivative claim constituted a claim under the policy separate from Travis' claim. On appeal by Aetna this Court reversed, declaring that the derivative claim was included within the $100,000 per person limit and was not compensable as a separate claim under the policy (see, 146 AD2d 125, supra).

In their answer, the Solomons asserted cross claims against Aetna for, inter alia, acting in bad faith by failing to settle plaintiffs' and Burkart's claims, including plaintiffs' derivative claims. Aetna, inter alia, moved for summary judgment dismissing that cross claim. Supreme Court (Prior, Jr., J.) granted Aetna's motion, citing this Court's holding on the derivative claim and concluding that the Solomons had not established a bad-faith cause of action at that point. The court, however, granted the Solomons' cross motion for leave to serve a supplemental cross claim against Aetna alleging a cause of action for bad faith in subsequently failing to settle and in failing to keep them fully informed as to the settlement negotiations.

In March 1989, at the end of the trial of the personal injury action, the jury returned a verdict in favor of plaintiffs on behalf of Travis, as reduced by Supreme Court to the amount of $5,100,603.10, and in favor of Burkart, as reduced by the court to the amount of $471,703.10. The jury found, however, that Amanda did not sustain a serious injury, thereby finding in favor of the Solomons. Aetna thereafter paid plaintiffs and Burkart the $200,000 plus interest under the per person limit of the policy. The Solomons reached a settlement with plaintiffs and Burkart in which they paid $45,000 in cash and transferred the equity in their home in which they retained a life interest.

In October 1993, pursuant to earlier authorization by Supreme Court, the Solomons served a supplemental cross claim in this declaratory judgment action contending that Aetna acted in bad faith for failing to secure a settlement and for failing to keep them fully advised as to settlement negotiations. Aetna opposed and moved for summary judgment dismissing the cross claim. The Solomons, inter alia, cross-moved for summary judgment on their bad-faith cross claim. Supreme Court denied Aetna's motion for summary judgment,

but granted the Solomons' cross motion, concluding that Aetna had failed to engage the Solomons in contribution discussions and, as a matter of law, acted in bad faith for failing to reach a settlement. Aetna now appeals.

We begin our analysis with the principle that, when confronted with a settlement offer within the policy limits, an insurer may be held liable for damages to its insured for a bad-faith refusal to settle (*see, Smith v General Acc. Ins. Co.*, 91 NY2d 648, 652-653). In order to establish an insurer's bad faith in failing to settle a claim, the insured must establish that "the insurer's conduct constituted a 'gross disregard' of the insured's interests—that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer" (*Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 453). In establishing bad faith, the courts will consider the facts and circumstances surrounding the case, including whether liability is clear, whether the potential damages far exceed the insurance coverage and "any other evidence which tends to establish or negate the insurer's bad faith in refusing to settle" (*id.*, at 455).

Clearly, these factors are not exclusive considerations in assessing a bad-faith settlement claim (*see, Smith v General Acc. Ins. Co., supra*, at 654). Additionally, the failure of the insurer to inform the insured of settlement negotiations is properly considered along with all the other facts and circumstances in determining whether the insurer was acting in bad faith (*see, id.*, at 653-654). Notably, an inference of bad faith may arise even though the claimant's settlement offer equals or exceeds the policy limits, if the insured is not informed of their right to contribute to the excess in order to achieve a settlement (*see, Brockstein v Nationwide Mut. Ins. Co.*, 417 F2d 703). However, an insurer confronted with multiple claims arising out of the same accident is not required—in order to forestall a bad-faith settlement claim—to accept a "package deal" within the overall policy limits if, in doing so, it would be overpaying on some of the claims in order that in the other claims, as to which the insurer is ready to pay the full policy limit, the insured not be exposed to liability that exceeds the policy limit (*see, Bates v Merchants Mut. Ins. Co.*, 277 F Supp 308, *affd on opn below* 392 F2d 591; 2 NY PJI 500-501 [1999 Supp]). Of course, in practice, insurers commonly consider and offer the overall per occurrence policy limits in such circumstances to achieve an equitable settlement and avoid protracted litigation, and nothing precludes them from so doing.

Applying the foregoing principles, we conclude, as a matter of law, that Aetna's bad faith has not been established. Early on in the personal injury action, after being informed by Aetna that it had retained trial counsel in their behalf to defend the action, and of the policy limits and their potential exposure, the Solomons retained independent counsel at their own expense. At the outset, plaintiffs and Burkart were asking for a settlement of $300,000 ($100,000 individually for Travis, $100,000 for his parents—plaintiffs, derivatively—and $100,000 for Burkart). After Supreme Court declared that the derivative claim could be paid as a separate claim under the policy (before that order was reversed on appeal), negotiations continued. Aetna authorized a settlement of $250,000, but plaintiffs and Burkart were asking for $275,000. Notably, in December 1988, trial counsel reported to Aetna that he believed plaintiffs would settle for $265,000, bringing the negotiating parties' offers within $25,000 to $15,000 of one another. The Solomons claim that they were never informed or aware of how close the action came to being settled. Following this Court's reversal on the derivative claim issue, plaintiffs and Burkart reduced their settlement demand to $250,000 ($100,000 total for Travis and plaintiffs, $100,000 to Burkart, and $50,000 to Amanda), stating that the proposed offer would only be held open until the trial started. Aetna did not accept this proposal.

As the trial was about to begin, Aetna offered $247,500 to settle the case (of which $47,500 was for Amanda in a structured settlement). According to the affidavit and deposition of the Solomons' independent counsel, Aetna did not communicate this offer to him despite his express request to be kept appraised of any settlement offer in case the Solomons wanted to contribute the difference. Plaintiffs and Burkart, however, continued to demand $250,000 cash without a structured settlement for Amanda. After the trial began, during an on-the-record conference with the Trial Judge, Aetna increased its offer to $250,000 cash. However, plaintiffs had already withdrawn their pretrial demand of $250,000 and raised it to $300,000. Ultimately, no settlement was reached and the jury returned its substantial verdict in favor of Travis and Burkart.

It is undisputed that, at all times, Aetna was prepared to pay the maximum per person policy coverage of $100,000 each to Travis and Burkart for their serious injuries. The disputes in the settlement involved (1) plaintiffs' derivative claim regarding Travis' injuries and (2) Aetna's assertion that Amanda did not sustain serious injuries. In our view, Aetna

had a bona fide argument with respect to these two issues. In fact, this Court confirmed Aetna's position that the derivative claim was not a separate claim from Travis' claim under the policy (*see*, 146 AD2d 125, *supra*) and, following the trial, the jury found that Amanda did not suffer a serious injury, thereby vindicating Aetna's position in that regard. Therefore, even if Aetna knew that the Solomons' liability to plaintiffs and Burkart was certain and that the possible damages far exceeded the overall policy limit, Aetna had an arguable basis to assert that its liability under the policy did not exceed $200,000 and to not settle beyond that amount.* It has been recognized that bad faith cannot be established when the insurer has an arguable basis for denying coverage (*see*, *Dawn Frosted Meats v Insurance Co.*, 99 AD2d 448, *affd on mem below* 62 NY2d 895). Thus, as a matter of law, Aetna's failure to settle this action for an amount above $200,000 does not establish or constitute bad faith (*see*, *id.*; *see also, Bates v Merchants Mut. Ins. Co.*, 277 F Supp 308, *supra*; *Smith v General Acc. Ins. Co.*, 91 NY2d 648, 652-653, *supra*; *United States Fid. & Guar. Co. v Copfer*, 48 NY2d 871, 873).

The Solomons also base their bad-faith cross claim against Aetna on its failure to fully inform them of the settlement negotiations (*see, Smith v General Acc. Ins. Co.*, *supra*, at 653-654). Miriam Solomon affirmed that trial counsel's office had no direct contact with them until just prior to trial and did not inform them as to what was happening with regard to the settlement discussions. She asserted that trial counsel never informed them or their independent counsel that, prior to trial, plaintiffs and Burkart had offered to accept $275,000 and might have been willing to go as low as $265,000, at a time when Aetna had authorized a settlement of $250,000, or that, during the trial, Aetna had offered $250,000. She further stated that if she and her husband had known that the difference between the parties was so nominal, they would have considered contributing the difference to avoid a potentially far greater jury verdict.

In denying Aetna's motion to dismiss and granting the Solomon's cross motion for summary judgment on their bad-faith cross claim against Aetna, Supreme Court also concluded that Aetna failed to engage the Solomons in contribution discussions. Of course, summary judgment is a drastic remedy which should not be granted if there is doubt as to the existence of a triable issue of fact (*see, Winegrad v New York Univ.*

---

* Notably, at times Aetna offered to settle this action for more than $200,000, a figure it believed exceeded its liability under this policy.

*Med. Ctr.*, 64 NY2d 851, 853; *Napierski v Finn*, 229 AD2d 869, 870), and the evidence must be viewed in the light most favorable to the opposing party (*see*, *Dykstra v Windridge Condominium One*, 175 AD2d 482). The test on summary judgment is whether the issue is one of law or fact (*see*, *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 291).

Upon our review, we are reminded that Aetna's alleged failure to inform the Solomons of settlement negotiations is a factor to be considered in determining bad faith (*see*, *Smith v General Acc. Ins. Co.*, *supra*, at 655). On this record, unlike the Solomons' claim that Aetna's failure to settle for an amount above $200,000 constituted bad faith, which we rejected as a matter of law, Aetna's alleged failure to keep them informed presents a question of fact for a jury. Thus, in viewing the evidence most favorably to the Solomons, we conclude that Supreme Court properly denied Aetna's motion for summary judgment dismissing the Solomons' cross claim. As to the Solomons' cross motion premised upon Aetna's failure to inform them of the settlement negotiations, viewing the evidence in a light most favorable to Aetna, we conclude that a triable issue of fact exists as to whether Aetna's failure to keep the Solomons informed established its bad faith. As such, the court should have denied the Solomons' cross motion as well.

Mercure, J. P., Peters, Carpinello and Graffeo, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted the cross motion of defendants Miriam Solomon and Herman Solomon for summary judgment; said cross motion denied; and, as so modified, affirmed.