Roemer v Allstate Indem. Ins. Co. (2018 NY Slip Op 05392)





Roemer v Allstate Indem. Ins. Co.


2018 NY Slip Op 05392


Decided on July 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 19, 2018

526012

[*1]JAMES T. ROEMER, Respondent,
v
ALLSTATE INDEMNITY INSURANCE COMPANY, Also Known as ALLSTATE INSURANCE COMPANY, Appellant.

Calendar Date: June 4, 2018

Before: McCarthy, J.P., Egan Jr., Lynch, Devine and

 Aarons, JJ.

Pemberton and Briggs, Schenectady (Paul Briggs of counsel), for appellant.
Ludemann, McMorris & Silvestri, PC, Glens Falls (John M. Silvestri of counsel), for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from an order of the Supreme Court (Auffredou, J.), entered February 10, 2017 in Warren County, which, among other things, partially denied defendant's motion for partial summary judgment.
In March 2010, a fire destroyed plaintiff's residence located at 1 Braley Point in the Hamlet of Bolton Landing, Warren County. Plaintiff's residence was one of two structures on the parcel of property (hereinafter the property), the other consisting of a lodge that plaintiff used as a rental
accommodation during the summer tourist season. The homeowners insurance policy for the property was procured through defendant and plaintiff was listed as the named insured. Following the fire, plaintiff promptly notified defendant of the loss and an investigation ensued. The parties' subsequent attempts to reach a settlement with respect to the amount of loss proved unsuccessful, and plaintiff thereafter initiated the appraisal process as set forth in defendant's insurance policy. Although the independent appraisers hired by the parties ultimately agreed upon the amount of loss in June 2011, no payment was subsequently forthcoming from defendant. Rather, on July 1, 2011, defendant issued plaintiff a written disclaimer of coverage, determining that plaintiff lacked an insurable interest in the property, as the titled owner of the [*2]property was Roe Management and Development, Inc. and not plaintiff.[FN1]
Plaintiff thereafter commenced this action seeking a declaratory judgment that he had an insurable interest in the property, that he is entitled to the agreed-upon settlement offer, that the disclaimer of coverage was improper and wrongful and that defendant acted in bad faith. Following joinder of issue, defendant moved for partial summary judgment seeking dismissal of plaintiff's claims for consequential damages, as well as plaintiff's claim alleging that defendant failed to act in good faith in adjusting plaintiff's insurance claim. Supreme Court partially granted defendant's motion by dismissing plaintiff's claim for counsel fees, but otherwise denied the motion, finding that defendant's alleged conduct created a question of fact as to whether it breached the covenant of good faith and fair dealing. Defendant now appeals.
As the proponent of the motion for summary judgment, it was defendant's burden to establish its prima facie entitlement to judgment as a matter of law by submitting admissible evidence demonstrating the absence of a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Smero v City of Saratoga Springs, 160 AD3d 1169, 1170 [2018]). "Only when the movant satisfies its obligation does the burden shift to the nonmovant to present evidence demonstrating the existence of a triable issue of fact" (Lacasse v Sorbello, 121 AD3d 1241, 1241-1242 [2014] [citations omitted]; see De Lourdes Torres v Jones, 26 NY3d 742, 763 [2016]). In reviewing such a motion, the facts must be viewed in the light most favorable to the nonmoving party, and every available inference must be drawn in favor of the nonmoving party (see De Lourdes Torres v Jones, 26 NY3d at 763).
A covenant of good faith and fair dealing is implicit in every insurance contract and encompasses not only any promise that a reasonable promisee would understand to be included, but also that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims" (New York Univ. v Continental Ins. Co., 87 NY2d 308, 318 [1995]; accord Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 194 [2008]; see Gutierrez v Government Empls. Ins. Co., 136 AD3d 975, 976 [2016]). In turn, "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" (Panasia Estates, Inc. v Hudson Ins. Co., 10 NY3d 200, 203 [2008] [internal quotation marks and citations omitted]; accord Yar-Lo, Inc. v Travelers Indem. Co., 130 AD3d 1402, 1403 [2015]). As relevant here, to establish a prima facie case of bad faith, it must be established "that the insurer's conduct constituted a gross disregard of the insured's interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer" (Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 453 [1993]; see Smith v General Acc. Ins. Co., 91 NY2d 648, 653 [1998]). In establishing a claim for bad faith, although not an exhaustive list, "the courts will consider the facts and circumstances surrounding the case, including whether liability is clear, whether the potential damages far exceed the insurance coverage and any other evidence which tends to establish or negate the insurer's bad faith in refusing to settle" (Redcross v Aetna Cas. & Sur. Co., 260 AD2d 908, 911 [1999] [internal quotation marks and citation omitted]; see Pavia v [*3]State Farm Mut. Auto. Ins. Co., 82 NY2d at 455; see also Insurance Law § 2601 [a] [4]).
Defendant contends that there is no evidence in the record demonstrating that it acted in bad faith or engaged in conduct constituting a gross disregard of its insured's interests such that it established its entitlement to summary judgment dismissing the complaint. We disagree. In support of its motion, defendant submitted, among other things, a copy of plaintiff's summons and complaint and plaintiff's verified bill of particulars. A review of the insurance claim process as set forth therein demonstrates that, the day after plaintiff's residence was destroyed by fire, plaintiff submitted a standard fire claim form notifying defendant of the loss and defendant thereafter commenced an investigation. While the investigation was pending, defendant advanced plaintiff $5,000 for the removal of debris from the property pursuant to its insurance policy. The Warren County Fire Investigation Office subsequently determined that the cause of the fire was accidental such that there appears to be no dispute that the accident is covered by the insurance policy. Additionally, for the following 12 months, defendant paid plaintiff for additional living expenses in accordance with the terms and coverage limits provided for in its insurance policy. When initial settlement negotiations thereafter proved unsuccessful, plaintiff commenced the appraisal process pursuant to the terms of the insurance policy, and each party thereafter hired their own independent appraiser to determine the amount of loss. In June 2011, the appraisers mutually agreed upon the amount of loss; however, on July 1, 2011 — 16 months after plaintiff's residence was destroyed by fire — defendant unexpectedly disclaimed coverage on the basis that plaintiff did not have insurable interest in the property.
We find that defendant failed to present any admissible evidence in support of its motion to explain why, after 16 months of investigation (see generally Insurance Law § 2601 [a] [4]), it only disclaimed coverage after the parties' independent appraisers had reached a mutual agreement as to the amount of loss incurred. At no point prior to paying plaintiff various benefits to which he was otherwise entitled under the insurance policy, or during settlement negotiations or the appraisal process, did defendant ever indicate to plaintiff that coverage might ultimately be denied because he was apparently not the titled owner of the property — a fact of which plaintiff avers he made his insurance agent aware prior to purchasing the subject policy.
Although defendant submitted the affirmation of its counsel in support of its motion, said affirmation was not based on counsel's personal knowledge and, therefore, it lacked any probative value (see CPLR 3212 [b]; Hill v Country Club Acres, Inc., 134 AD3d 1267, 1268 [2015]) as to whether defendant's conduct in investigating and ultimately delaying its denial of coverage constituted bad faith. Thus, viewing the evidence in a light most favorable to plaintiff, we find that defendant failed to establish its prima facie entitlement to judgment as a matter of law by eliminating all triable issues of fact as to whether it investigated the loss in good faith (see Bi—Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d at 192-194; Gauthier v Countryway Ins. Co., 100 AD3d 1062, 1063-1064 [2012]; Gruenspecht v Balboa Ins. Co., 93 AD3d 482, 482 [2012]; compare Miller v Allstate Indem. Co., 132 AD3d 1306, 1307-1308 [2015]). Therefore, we need not determine whether the papers submitted by plaintiff in opposition were sufficient to raise a triable issue of fact (see Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853; Doody v Liberty Mut. Group, Inc., 137 AD3d 959, 960 [2016]). Accordingly, we find that Supreme Court properly denied defendant's motion for partial summary judgment dismissing that part of plaintiff's claim alleging that he failed to act in good faith.
McCarthy, J.P., Lynch, Devine and Aarons, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: The property was originally purchased in July 2000 in the name of Roe Management and Development, Inc., a corporation with only two shareholders — plaintiff, who owned 49% of the corporation, and Mary Roemer, plaintiff's sister, who owned 51%.