21-2532-cv
*Hunt Construction Group, Inc. v. Berkley Assurance Co.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of December, two thousand twenty-two.

PRESENT:  JOSÉ A. CABRANES,
ROSEMARY S. POOLER,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

---

HUNT CONSTRUCTION GROUP, INC.,

*Plaintiff-Appellant,*                                          21-2532-cv

v.

BERKLEY ASSURANCE COMPANY,

*Defendant-Appellee.*

---

FOR PLAINTIFF-APPELLANT:      MICHELLE R. MIGDON (Robin L. Cohen, *on the brief*), Cohen Ziffer Frenchman & McKenna LLP, New York, NY.

FOR DEFENDANT-APPELLEE:      MAX H. STERN (David T. McTaggart, *on the brief*), Duane Morris LLP, San Francisco, CA.

Appeal from a judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*).

1

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Plaintiff Hunt Construction Group, Inc. sued Defendant Berkley Assurance Company under New York law for breaches of contract and the implied covenant of good faith and fair dealing after Berkley refused to defend Hunt against professional liability claims. The District Court granted Berkley's motion for summary judgment in full. Hunt appeals. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the grant of summary judgment *de novo*, drawing all inferences in favor of the nonmoving party. Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (citation omitted) (quoting Fed. R. Civ. P. 56(a)).

## I.     Alleged breach of contract: Fairmont Austin Claim

Hunt alleges a breach of contract based on Berkley's refusal to defend it against claims stemming from a construction project in Austin ("Fairmont Austin Project"). The contracts at issue are insurance policies that required Hunt to report during the policy periods any "Professional Claims" made against it during that period. The insurance policies, known as "claims-made-and-reported policies," covered two periods: July 2016 to July 2017 and July 2018 to July 2019.

In December 2018, Hunt reported to Berkley that its parent company had been sued the month prior in connection with the Fairmont Austin Project. It also later reported a related and largely duplicative arbitration demand made in April 2019. Both the lawsuit and arbitration demand ("the Fairmont Austin Claim") referenced a February 2017 letter, titled "Notice of Claims," that Hunt had received but not reported to Berkley during the relevant 2016–2017 policy period. Berkley ultimately rejected Hunt's claim for defense coverage of the lawsuit and arbitration demand. It reasoned that the February 2017 letter had constituted a Professional Claim under the policy, and that, consequently, the Fairmont Austin Claim and the February 2017 letter were a single claim that had been untimely reported.

Hunt contends this denial was improper for three reasons: (1) the February 2017 letter was not a "Professional Claim" and thus did not have to be reported during the 2016–2017 policy period; (2) even if the February 2017 letter was a Professional Claim, Berkley had waived the requirement that the claim be reported during the 2016–2017 policy period; and (3) the reference to professional liability incurred after February 2017 in the later reported lawsuit and arbitration demand required Berkley to defend Hunt against all allegations made in the Fairmont Austin Claim. We address each argument in turn.

2

First, for the reasons stated by Judge Oetken in his thorough opinion dated November 30, 2020, we agree that the February 2017 letter constituted a claim that had to be reported during the 2016–2017 policy period.

Second, for the reasons stated by Judge Oetken in his opinion dated September 24, 2021, we also agree that Berkley could not have waived the insurance policy's timely reporting requirement, which, in this case, goes to the "existence or nonexistence of coverage." *Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 87 (1980).[1]

Third, we agree with the District Court that, under the insurance policies, the February 2017 letter and the Fairmont Austin Claim are a single claim barred from coverage. The policies treat as a single claim all those "arising out of one or more acts, errors, omissions, . . . or a series thereof, that are related (either causally or logically)." Moreover, all claims "treated as a single Claim . . . shall be considered first made on the date the earliest such claim . . . was first made." We find this language unambiguous and therefore consider whether the grievances contained in the February 2017 letter and the Fairmont Austin Claim arose out of related acts, errors, or omissions. We conclude that they do: both claims arose out of Hunt's alleged mismanagement, resulting in significant delays.

The similar language employed in both the February 2017 letter and the Fairmont Austin Claim is revealing. The February 2017 letter alleged "continued failures to meet significant deadlines," "lack of supervision," and insufficient remedial action. The Fairmont Austin Claim alleged "the absence of effective management" and "problems with Hunt's scheduling, sequencing and general management supervision." That the Fairmont Austin Claim references problems that occurred after February 2017 does not change the fact that the claims arose from the same errors. Accordingly, the February 2017 letter and the Fairmont Austin Claim must be treated as a single claim that should have been reported during the 2016–2017 policy period. Because Hunt failed to report the claim during that period, Hunt is not entitled to coverage.

The District Court correctly granted Berkley's summary judgment motion as to the Fairmont Austin Claim.

## II.    Alleged breach of contract: Houston Methodist Claim

Hunt also contests Berkley's refusal to defend it against a suit seeking more than $37 million in allegedly outstanding payments related to a construction project in Houston ("Houston Methodist Claim"). We are asked to consider whether the District Court properly decided that Berkley has no

---

[1] We apply New York law or our Circuit's law interpreting it because the policies identify New York law as governing any suits. *See generally Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000).

obligation to defend Hunt. Under the relevant insurance policy, Berkley must defend Hunt against any "Professional Claim aris[ing] out of any actual or alleged negligent act, error or omission in the rendering of or failure to render Professional Services."

Berkley argues that the claim arose from circumstances beyond the insurance policy's coverage provision—namely, from Hunt's intentional decision not to pay its subcontractors rather than the negligent rendering of Professional Services. Hunt contends that it is entitled to coverage because alleged negligence caused the $37 million in additional costs. We consider the relevant coverage provision unambiguous, so we give it its "plain and ordinary meaning." *Lavanant v. General Acc. Ins. Co. of Am.*, 595 N.E.2d 819, 822 (N.Y. 1992). "To 'arise out of' means 'to originate from a specified source,' . . . and generally indicates a causal connection." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) (citations omitted) (quoting Webster's Third New International Dictionary 117 (1981)). Here, the specified source is Hunt's refusal to pay its subcontractor. There is a causal connection between the failure to pay and the claim, but the same is not true for any alleged negligence. Negligence may have caused Hunt to incur extra costs, but it did not cause Hunt to refuse to pay them. There is no allegation that the failed payments resulted from negligence. Furthermore, payment of subcontractors is not within the policy's definition of "Professional Services."

We thus conclude that the Houston Methodist Claim was not a Professional Claim against which Berkley must defend Hunt. The District Court correctly granted Berkley's summary judgment motion as to that claim.

### III. Alleged breach of implied covenant of good faith and fair dealing

The final issue we must address is whether the District Court properly dismissed Hunt's claim for breach of the implied covenant of good faith and fair dealing. Under New York law, a breach of the implied covenant of good faith and fair dealing "is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). That is, a breach of the implied covenant is a breach of an "implied obligation" within the contract. *Dalton v. Educ. Testing Servs.*, 663 N.E.2d 289, 291 (N.Y. 1995). Therefore, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *IC Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)).

Accordingly, the question is whether the conduct Hunt alleges violated the implied covenant is the same conduct it alleges breached the contract. Hunt alleges that five types of conduct violated the implied covenant: Berkley (1) took meritless coverage positions, (2) changed its coverage positions without any basis, (3) held hostage Hunt's defense costs in an effort to persuade Hunt to

4

abandon its contractual rights, (4) unnecessarily inflicted costs on Hunt by taking unprincipled and frivolous coverage positions, and (5) failed to deal with claims expeditiously and fairly.

The first four types of alleged conduct are variations of the same alleged wrongdoing—namely, that Berkley wrongly denied coverage. Berkley's coverage positions are meritless, baseless, unprincipled, or frivolous—that is, made in bad faith—only if Berkley had no "arguable basis for denying coverage." *Redcross v. Aetna Cas. & Sur. Co.*, 688 N.Y.S.2d 817, 821 (App. Div. 1999); *see id.* ("It has been recognized that bad faith cannot be established when the insurer has an arguable basis for denying coverage."). And Berkley could only have "held hostage" Hunt's defense costs if Berkley had declined to defend Hunt despite Hunt's clear entitlement to coverage. That Berkley wrongly denied coverage is also the alleged conduct that underlies Hunt's breach of contract claims. Thus, Hunt's implied covenant claim is redundant and must be dismissed to the extent it relies on the first four types of conduct.

The fifth type of alleged conduct—Berkley's failure to deal with claims expeditiously and fairly—is not the basis for Hunt's breach of contract claims. Yet summary judgment dismissing the implied covenant claim remains appropriate. To breach the implied covenant of good faith and fair dealing, a party "must directly violate[ ] an obligation that may be presumed to have been intended by the parties." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990). We cannot presume Hunt and Berkley intended to require Berkley to "deal with claims expeditiously and fairly." The terms "expeditiously" and "fairly" are ambiguous, and we cannot presume that well counseled parties would agree to them without further definition.

In sum, the District Court rightly granted summary judgment dismissing Hunt's implied covenant claim because it is in part redundant and otherwise ungrounded in the violation of an intended term.

## CONCLUSION

To summarize, we conclude the following:

(1) Hunt is not entitled to coverage for the Fairmont Austin Claim. The February 2017 letter was a "Professional Claim" under the 2016-2017 policy. The February 2017 letter and the Fairmont Austin Claim are, for the purpose of coverage, a single claim that should have been but was not reported during the 2016–2017 policy period. Berkley could not have waived the timely reporting requirement.

(2) Hunt is not entitled to coverage for the Houston Methodist Claim. The insurance policy does not cover Professional Claims arising out of the intentional nonpayment of a subcontractor.

5

(3) Hunt may not proceed with its claim of breach of the implied covenant of good faith and fair dealing. The claim is partially redundant of its breach of contract claim and otherwise ungrounded in the violation of an intended term.

We have reviewed all of the arguments raised by Hunt on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the September 24, 2021 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court