■ MARY VECCHIONE et al., Appellants, v AMICA MUTUAL INSURANCE COMPANY, Respondent. [711 NYS2d 186] —In an action to recover damages for the bad faith refusal to settle a personal injury action, the plaintiffs appeal from an order of the Supreme Court, Nassau County (O'Connell, J.), dated June 28, 1999, which granted the defendant's motion pursuant to CPLR 4404 to set aside the verdict in favor of the plaintiffs and dismissed the complaint.

Ordered that the order is affirmed, with costs.

Where a jury verdict is set aside on the ground that it is not supported by sufficient evidence as a matter of law, the rele-

vant inquiry upon appellate review is whether there existed a valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury on the evidence presented at trial (*see, Campbell v City of Elmira,* 84 NY2d 505, 509; *Cohen v Hallmark Cards,* 45 NY2d 493, 499; *Nicastro v Park,* 113 AD2d 129, 132). The Supreme Court properly found the evidence insufficient to support the jury's finding that the defendant insurance carrier acted in gross disregard of its policyholder's interests when it failed to tender the full amount of the policy in response to a demand for settlement (*see, Smith v General Acc. Ins. Co.,* 91 NY2d 648, 652; *Soto v State Farm Ins. Co.,* 83 NY2d 718, 723; *Pavia v State Farm Mut. Auto. Ins. Co.,* 82 NY2d 445, 452).

The underlying personal injury action arose from a collision in June 1988 between a vehicle owned by the plaintiff Mary Vecchione and operated by the plaintiff Victoria Vecchione, and a vehicle owned by William Kossman in which Patricia Neary and Kathleen Neary were passengers. The Nearys brought an action against Kossman and the Vecchiones in August 1988, at which time Patricia was still in a coma and not expected to survive, and Kathleen remained incapacitated, requiring a wheelchair. The Vecchiones were insured by the defendant, Amica Mutual Insurance Company (hereinafter Amica), under a policy with a single limit of $300,000.

Prior to a pretrial conference on January 19, 1993, Amica's claims supervisor, Robert Valliere, requested authorization to tender the policy limit. This request was denied by an Amica senior vice president, who suggested waiting to see the results of the conference or proceeding through the liability phase of the trial before attempting settlement. In February 1993, on the adjourned date of the pretrial conference, Valliere, expressing concern for the potential exposure of the Vecchiones to an excess judgment, sought authority to offer the Nearys a so-called "high/low" agreement, pursuant to which the Nearys would receive the full policy limit of $300,000 if, after the liability phase of the trial, Victoria was found to be at fault, but Amica would still pay $100,000 even if the jury found no liability on her part. Authorization for the "high/low" proposal was granted, although counsel for the Vecchiones did not make the offer at the conference, deeming it "premature" to do so.

The case was marked final and adjourned to March 24, 1993. On March 1, 1993, counsel for the Nearys sent a demand letter to counsel for the Vecchiones, seeking tender of the policy limits within 48 hours or the offer of settlement would be withdrawn. Valliere responded by presenting the "high/low" proposal,

which was rejected by counsel for the Nearys, who told Valliere he would not even discuss it with the Nearys.

The personal injury action was tried in November 1993. The jury found Kossman 95% at fault for the happening of the accident and Victoria Vecchione 5% at fault (*see, Neary v Vecchione*, 220 AD2d 566). A judgment in the sum of approximately $1.5 million was entered against the Vecchiones, who subsequently assigned any claim they might have against Amica to the Neary sisters and their mother, Carol Neary.

Thereafter, this action was commenced by the Vecchiones and the Nearys as their assignees. The jury found that Amica's decision not to offer its full policy in response to the demand letter constituted "a gross disregard of the Vecchiones' interests, that is * * * a deliberate or reckless failure to place the interests of the Vecchiones on an equal footing with Amica's own interests". Amica moved for an order pursuant to CPLR 4404 (a) setting aside the verdict, which motion the court granted. This appeal ensued.

To establish a prima facie case of bad faith refusal to settle, a plaintiff must demonstrate that the insurance carrier's conduct constituted a gross disregard of the policyholder's interests—that is, a deliberate or reckless failure to place on an equal footing its own interests and those of the policyholder when considering a settlement offer (*see, Smith v General Acc. Ins. Co.*, 91 NY2d 648, 652, *supra; Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 452, *supra*). "In other words, a bad-faith plaintiff must establish that the defendant insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted" (*Pavia v State Farm Mut. Auto. Ins. Co., supra*, at 453-454). It must be shown that a demand for settlement was made and that the policyholder lost an actual opportunity to settle the claim at a time when all serious doubts as to liability were removed (*see, Pavia v State Mut. Auto. Ins. Co., supra; United States Fid. & Guar. Co. v Copfer*, 48 NY2d 871, 873). It must also be highly probable that the severity of the injuries would result in a verdict in excess of the policy limits (*see, Pavia v State Farm Mut. Auto. Ins. Co., supra*, at 454; *DiBlasi v Aetna Life & Cas. Ins. Co.*, 147 AD2d 93, 99).

Factors that enter into the bad faith equation include the likelihood of success on the liability issue in the underlying action, the potential magnitude of damages and resulting financial burden each party may be exposed to as a result of a

refusal to settle, and the information available to the insurance carrier at the time the demand for settlement is made (*see, Smith v General Acc. Ins. Co., supra,* at 653-654; *Pavia v State Farm Mut. Auto. Ins. Co., supra*; 14 Couch, Insurance § 203:23 [3d ed]). Also to be considered in making the determination is " 'any other evidence which tends to establish or negate the insurer's bad faith in refusing to settle' " (*Smith v General Acc. Ins. Co., supra,* at 654; *Pavia v State Farm Mut. Auto. Ins. Co., supra,* at 455).

Here, Amica's offer of the "high/low" agreement in response to the Nearys' demand letter clearly negates a finding that its refusal to tender the policy limits amounted to a deliberate or reckless failure to place the policyholder's interests on an equal footing with its own. Rather, the evidence demonstrates that Amica made the proposal for the purpose of protecting the policyholder from a potential excess judgment. That Amica may have greatly overestimated the likelihood that its policyholder would not be found liable for the accident is indicative of an error in judgment, not bad faith. The gross disregard standard, like gross negligence and reckless disregard, requires a higher level of culpability than ordinary negligence (*see, Pavia v State Farm Mut. Auto. Ins. Co., supra,* 82 NY2d, at 453; *cf., Campbell v City of Elmira,* 84 NY2d 505, 510-511; *Colnaghi, U.S.A. v Jewelers Protection Servs.,* 81 NY2d 821, 823-824; *see generally,* Kreindler, New York Law of Torts § 7.19, at 389-391; Prosser and Keeton, Torts § 34, at 211-214 [5th ed]). Joy, J. P., Thompson, Krausman and Goldstein, JJ., concur.