■ CBLPATH, INC., Appellants, v LEXINGTON INSURANCE COMPANY, Respondent. [900 NYS2d 462]—

In an action to recover damages for breach of the covenant of good faith and fair dealing implied in an insurance contract, the plaintiffs appeal from an order of the Supreme Court, Westchester County (Rudolph, J.), entered March 3, 2009, which granted the defendant's motion for summary judgment dismissing the complaint and denied their cross motion to dismiss the defendant's affirmative defenses.

Ordered that the order is affirmed, with costs.

Underlying the instant action is a claim against the plaintiffs, CBLPath, Inc., and CBLPath Holdings Corporation (hereinafter together CBL), by Darrie Eason, who alleged that, in March 2006, CBL, a medical diagnostic laboratory, negligently switched her biopsy specimen with a biopsy specimen from another individual, which resulted in Eason being erroneously diagnosed with breast cancer, and subsequently undergoing an unnecessary double mastectomy. At the time, CBL was covered under a medical malpractice insurance policy issued by the defendant Lexington Insurance Company (hereinafter Lexington), a subsidiary of American International Group, Inc. (hereinafter AIG). The policy provided CBL with coverage for medical malpractice liability of up to the sum of $1,000,000 per medical incident. CBL timely reported the claim to Lexington, which referred the matter for handling on its behalf to AIG Domestic Claims (hereinafter AIGDC), also an AIG subsidiary.

From February 2007 through September 2007, Eason's counsel made several attempts to open settlement discussions, but AIGDC, which in February 2007 allegedly exercised its right as the sole authority to handle the Eason claim, never made a substantive response to those inquiries. Eason commenced the underlying action in October 2007. Lexington contends (and CBL does not dispute) that Eason's counsel did not issue the

first settlement demand until December 2007, which was after the commencement of the underlying action, and demanded the sum of $5,000,000, which was five times more than the policy limit. The underlying action was settled several months later for the sum of $2,500,000, with Lexington paying the policy limit in the sum of $1,000,000 and CBL paying the balance. CBL thereafter commenced the instant action against Lexington, asserting a single cause of action for breach of the covenant of good faith and fair dealing implied in the insurance contract. The gravamen of CBL's complaint is that AIGDC, which had asserted sole control over the Eason claim, acted in bad faith by refusing to enter into prelitigation settlement discussions with Eason's counsel. CBL sought actual and consequential damages, including, inter alia, injury to its business reputation, lost sales, increased sale expenses, lost profits, and lost business opportunities caused by the negative publicity that resulted from the commencement of the underlying action. After joinder of issue, Lexington moved for summary judgment dismissing the complaint, and CBL cross-moved to dismiss Lexington's affirmative defenses. The Supreme Court granted Lexington's motion and denied CBL's cross motion. CBL appeals, and we affirm.

"For a breach of contract based only on a failure to make reasonable settlement of a claim within the policy limits, damages are measured by the policy limits. For a breach of implied conditions of the contract to act in its performance in good faith in refusing to settle within the policy limits, the damages may exceed the policy limits" (*Gordon v Nationwide Mut. Ins. Co.*, 30 NY2d 427, 436-437 [1972], *cert denied* 410 US 931 [1973]). Since an award of damages exceeding the policy limits is punitive in nature, it "is not applied routinely for breach of contract; and bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract" (*id*. at 437).

An insurer "may be held liable for the breach of its duty of 'good faith' in defending and settling claims over which it exercises exclusive control on behalf of its insured" (*Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d 445, 452 [1993]). The root of this doctrine is that, typically, an insurer exercises "complete control over the settlement and defense of claims against their insureds, and, thus, under established agency principles may fairly be required to act in the insured's best interests" (*id*.). However, since courts are understandably reluctant to expose insurers to liability exceeding the policy limits, the bad faith must be for conduct that is clearly more than ordinary negligence, i.e., more than merely poor judgment (*id*. at 453).

"Naturally, proof that a demand for settlement was made is a prerequisite to a bad-faith action for failure to settle . . . [Additionally,] the plaintiff in a bad-faith action must show that the insured lost an actual opportunity to settle the . . . claim at a time when all serious doubts about the insured's liability were removed.

"Bad faith is established only where the liability is clear and the potential recovery far exceeds the insurance coverage" (*id.* at 454 [internal quotations marks and citations omitted]; *see also Smith v General Acc. Ins. Co.*, 91 NY2d 648, 653 [1998]; *Soto v State Farm Ins. Co.*, 83 NY2d 718, 723 [1994]; *Vecchione v Amica Mut. Ins. Co.*, 274 AD2d 576, 578 [2000]; *cf. United States Fid. & Guar. Co. v Copfer*, 48 NY2d 871, 873 [1979]).

Here, Lexington met its prima facie burden of establishing its entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]) by submitting, inter alia, an affirmation of an AIGDC attorney who had handled the Eason claim. In that affirmation, the attorney stated that Eason's counsel did not issue the first settlement demand until after commencement of the underlying action, and that once such demand was made, negotiations ensued, and a settlement was reached, with Lexington paying the policy limit in the sum of $1,000,000, and CBL responsible for the balance in the sum of $1,500,000. Thus, Lexington established that CBL's bad faith claim could not stand, as there was no pre-litigation settlement demand made within the policy limits (*see Smith v General Acc. Ins. Co.*, 91 NY2d at 653; *Soto v State Farm Ins. Co.*, 83 NY2d at 723; *Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d at 454).

In opposition, CBL failed to raise a triable issue of fact. CBL submitted, inter alia, an affidavit of its vice president and corporate controller, who indicated that after AIGDC asserted exclusive control over the Eason claim in February 2007, it thereafter refused to contact Eason's counsel to settle her claim and avoid negative publicity to CBL. Notably, however, CBL's opposition did not raise a triable issue of fact as to whether Eason's counsel had made a pre-litigation settlement demand within the policy limits. As such, while it may arguably be some evidence of bad faith that AIGDC failed to enter into pre-litigation settlement discussions with Eason's counsel at a time when CBL's liability was not in doubt and the nature of Eason's injuries indicated that her recovery would exceed the policy limit, we are constrained to find that Lexington was entitled to summary judgment because CBL failed to raise a triable issue

of fact as to whether Eason made a pre-litigation settlement demand within the policy limit (*see Pavia v State Farm Mut. Auto. Ins. Co.*, 82 NY2d at 453; *see also Smith v General Acc. Ins. Co.*, 91 NY2d at 653; *Soto v State Farm Ins. Co.*, 83 NY2d at 723; *Vecchione v Amica Mut. Ins. Co.*, 274 AD2d at 578). Under the circumstances, CBL cannot show that, because of AIGDC's conduct, it lost an actual opportunity to settle and, thus, any damages it asserts are based on mere speculation (*see United States Fid. & Guar. Co. v Copfer*, 48 NY2d at 873).

In light of our determination, CBL's remaining contentions have been rendered academic. Fisher, J.P., Florio, Belen and Austin, JJ., concur.