11-3025-cv (L)
Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of January, two thousand thirteen.

Present:
ROBERT A. KATZMANN,
BARRINGTON D. PARKER,
RICHARD C. WESLEY,
*Circuit Judges.*

_____

FENDI ADELE, S.R.L., FENDI S.R.L., FENDI NORTH AMERICA, INC.,

*Plaintiffs-Appellees-Cross-Appellants*,

v.                                           Nos.    11-3025-cv (Lead)
                                                     11-3027-cv (Con)
                                                     11-3058-cv (XAP)

ASHLEY REED TRADING, INC., SCOTT RESSLER, JAMES RESSLER,

*Defendants-Appellants-Cross-Appellees*.

_____

For Plaintiffs-Appellees
-Cross-Appellants:                RICHARD L. MATTIACCIO, (Victor Genecin, Steven A. Delchin, Samuel Spital, and Corrine A. Irish, *on the brief)*, Squire Sanders LLP, New York, NY

For Defendants-Appellants-Cross
-Appellees Ashley Reed Trading, Inc.
& Scott Ressler:                        GERARD F. DUNNE, Law Firm of Gerard F. Dunne,
                                        New York, NY

For Defendant-Appellant
-Cross-Appellee James Ressler:          DAVID I. SCHOEN, Montgomery, AL

Appeal from the United States District Court for the Southern District of New York (Berman, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED IN PART, VACATED IN PART AND REMANDED**.

Defendants-Appellants-Cross-Appellees Ashley Reed Trading, Inc., Scott Ressler, and James Ressler (collectively, "Ashley Reed") appeal a June 30, 2011, judgment of the United States District Court for the Southern District of New York (Berman, *J.*). On summary judgment, the district court held Ashley Reed liable for trademark counterfeiting, false designation of origin, and trademark dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and for unfair competition and trademark dilution under New York state law. The district court awarded Plaintiffs-Appellees-Cross-Appellants Fendi Adele S.R.L., Fendi S.R.L., and Fendi North America, Inc. (collectively, "Fendi") $12,324,062.66 in trebled damages, prejudgment interest, costs, and attorneys' fees. Specifically, because it found willful infringement, the court ordered the disgorgement of Ashley Reed's profits from selling Fendi-branded products in 2005 and 2006.

2

On appeal, Ashley Reed contends that the district court erred by (1) rejecting its affirmative defenses of acquiescence and laches, (2) admitting Leonardo Minerva's testimony that Fendi-branded products sold by Ashley Reed were counterfeit, (3) finding Ashley Reed liable for infringement that occurred before 2005, (4) deciding on summary judgment that Ashley Reed's infringement was willful despite disputed questions of fact, and (5) failing to deduct Ashley Reed's costs from its gross revenue when calculating its profits. James Ressler separately argues that the district court erred by refusing to stay his deposition pending completion of criminal proceedings against him. On cross-appeal, Fendi challenges the district court's decision to award damages based only on Ashley Reed's 2005 and 2006 profits even though the court appeared to find the defendants liable from 2001 to 2004 as well.[1] We assume the parties' familiarity with the underlying facts and procedural history of this case, as well as the issues on appeal.

We review a district court's grant of summary judgment *de novo*. *10 Ellicott Square Court Corp. v. Mtn. Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011). Summary judgment is "appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation mark omitted). The moving party must offer concrete evidence showing the absence of a disputed issue of material fact, and then the burden shifts to the nonmoving party to present specific evidence showing a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

---

[1] Fendi argues that it is entitled to damages from 2000 to 2006, but the district court stated that there was evidence of defendants' awareness of counterfeit goods "since 2001," so we assume that the relevant period on appeal is 2001 to 2006.

We first address Ashley Reed's contention that the affirmative defenses of acquiescence and laches should have barred Fendi's claims. To prove acquiescence, a defendant must demonstrate that the plaintiff actively consented. Active consent means "conduct on the plaintiff's part that amount[s] to an assurance to the defendant, express or implied, that the plaintiff would not assert his trademark rights against the defendant." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002) (alteration in original) (internal quotation marks omitted). Laches will bar a plaintiff's claim when a defendant has been prejudiced by a plaintiff's unreasonable delay in bringing suit; no affirmative consent is required because the unreasonable delay implies consent. *Id.* at 67. Here, the parties agree that Ashley Reed bears the burden of proof.

Ashley Reed failed to prove either defense. There is no evidence that Fendi actively consented to infringement by Ashley Reed. Although Fendi remained silent for several years after the 2001 meetings between the parties, Fendi was entitled to investigate and was under no obligation to respond. Ashley Reed was on notice that Fendi believed it was selling infringing products. Moreover, Ashley Reed presented no evidence that Fendi unreasonably delayed in filing suit. On the contrary, Fendi sued promptly after discovering counterfeit handbags that it could prove were sold by Ashley Reed.

We next turn to Ashley Reed's argument that the district court erred in considering Leonardo Minerva's deposition testimony, which Ashley Reed contends was inadmissible. The district court "has wide discretion in determining which evidence is admissible [on summary judgment, and] we review its evidentiary rulings for manifest error." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). Given this highly deferential

4

standard of review, we cannot say it was "manifest error" for the district court to conclude that Minerva's testimony was based on sufficient personal knowledge. Although Minerva's assistant performed the initial inspections of the allegedly counterfeit items and drafted the reports, Minerva testified that he reviewed each report, discussed them with his assistant, made revisions as necessary, and approved each report. As part of this process, Minerva looked at each item and personally double-checked at least one indicator of the item's counterfeit nature. He also testified that he would not have signed a report if he thought it was inaccurate and that each report he was shown refreshed his recollection of inspecting that item. Additionally, even assuming that Minerva read directly from the reports during his testimony, the district court has considerable discretion to permit a witness to consult a writing when the information is highly detailed. *See United States v. Riccardi*, 174 F.2d 883, 890 (3d Cir. 1949) (allowing the witness to read from a document when "the items . . . involved were so numerous that in the ordinary course of events no one would be expected to recite them without having learned a list by rote memory").[2]

Ashley Reed does not dispute that Minerva's testimony—if admissible—establishes its liability for infringement during 2005 and 2006. However, it argues that a trial was necessary to determine whether it infringed Fendi's trademarks before 2005 because there was no direct proof that it infringed during that period. Although Fendi did not produce any counterfeit items sold

_____

[2] *See also* S. Broun, *McCormick on Evidence* § 9 (6th ed. 2009) ("[When a document is] so lengthy and detailed that even a witness with a fresh memory would realistically be unable to recite all the items unaided," a witness "may be unable to detail those facts from memory without consulting the writing. Accordingly, the generalization that, once refreshed, a witness must speak independently of the writing is too inflexible [and] the matter ought to be entrusted to the trial judge's discretion.").

5

by Ashley Reed before 2005, there is a significant amount of circumstantial evidence that supports the district court's apparent finding of liability.[3]  During that time, Ashley Reed was operating under the same procedures as it was in 2005 when it sold the counterfeit bags inspected by Minerva.  As discussed further below, it failed to keep adequate records of its transactions with its suppliers and to adequately check the authenticity of the goods it purchased.  Moreover, Fendi's Chief Financial Officer compared invoices that Ashley Reed did retain to legitimate Fendi records and concluded that many of Ashley Reed's invoices—dated as early as 2000— were forgeries.  Given that Ashley Reed was buying products with fabricated Fendi invoices as early as 2000, it strains credulity to believe that none of these products were counterfeit.  The district court did not err in resolving Ashley Reed's liability for the entire 2001 to 2006 period on summary judgment.

Once liability is established, Fendi's entitlement to Ashley Reed's profits depends upon whether the infringement was willful.  Fendi argues that it does not need to prove willfulness, relying on decisions from some of our sister circuits holding that a 1999 amendment to the Lanham Act changed the governing rule.  *See, e.g.*, *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 174 (3d Cir. 2005).  However, we need not resolve the question because, assuming *arguendo* that Fendi is still required to prove willfulness, the district court properly concluded on summary judgment that Ashley Reed willfully infringed Fendi's trademarks.  To prove willfulness, a "plaintiff must show (1) that the defendant was actually aware of the infringing

---

[3] The district court did not make an explicit finding about the period of infringement, but after the magistrate judge recommended that the case proceed to trial to determine whether Ashley Reed was liable for infringement from 2001 to 2004, the court rejected this recommendation and concluded that its previous decision on summary judgment had "resolved the question of [Ashley Reed's] liability for counterfeiting."

activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005) (internal quotation marks omitted). In the context of a trademark infringement action, willful blindness means that a defendant knew it might be selling infringing goods but nevertheless "intentionally shielded itself from discovering" the truth. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010). Despite Ashley Reed's claims, willful blindness can be proven on summary judgment; a finding of actual knowledge is not required. *See, e.g., United States v. 755 Forest Road*, 985 F.2d 70, 73 (2d Cir. 1993).

Ashley Reed argues that the district court ignored reasonable inferences that should have been drawn in its favor and, in doing so, improperly resolved disputed questions of material fact. However, given the evidence, no reasonable jury could have credited these proposed inferences. Ashley Reed was clearly on notice that it might be infringing trademarks after Fendi's 2001 cease and desist letter and multiple lawsuits filed by other designers in 2000 and 2001. Nevertheless, the record shows that Ashley Reed failed to adequately inquire about the authenticity and original sources of the goods they purchased. Ashley Reed's suppliers provided defendants with "sanitized" invoices that did not disclose the original sources and, in some cases, refused to provide any paperwork. Ashley Reed also failed to maintain records of their transactions with suppliers and other key financial documents and did not retain any documentation of its purported side-by-side comparisons of its goods with genuine Fendi merchandise. Perhaps most tellingly, Ashley Reed returned its remaining Fendi merchandise to its suppliers after Fendi filed suit instead of allowing it to be inspected and did not keep any records concerning these goods or their return.

Under these circumstances, a reasonable jury could not conclude that Ashley Reed acted with sufficient care to ensure that its goods were not counterfeit given that they were on notice of the goods' possibly counterfeit nature. Similarly, a reasonable jury could not credit Scott Ressler's testimony that he conducted side-by-side comparisons to ensure his products' authenticity given the lack of records and obvious differences—according to Mr. Minerva—between the counterfeit goods and genuine Fendi products. *See Scott v. Harris*, 550 U.S. 372, 378-80 (2007) (holding that a court should not credit testimony on summary judgment when it is so clearly contradicted by other evidence that no reasonable jury could believe it). Even if we credited Scott Ressler's testimony that a Fendi inspector assured him that certain goods from certain suppliers would be authentic, Ashley Reed does not contend that it purchased all of its Fendi-branded products through those channels. Additionally, the other evidence establishes that the defendants exhibited willful blindness with respect to the goods it acquired through other channels. Therefore, the district court correctly concluded that Ashley Reed's infringement was willful as a matter of law.

Separate from his co-defendants, James Ressler contends that the district court should have stayed his deposition until the termination of federal criminal proceedings against him. This argument is without merit. As an initial matter, nothing prevented Mr. Ressler from petitioning the district court to allow him to submit an affidavit after his criminal trial had ended; however, he declined to do so. Moreover, we have held that in this context we will not disturb "[a] decision so firmly within the discretion of the district court" unless "it vitiates a defendant's constitutional rights or otherwise gravely and unnecessarily prejudices the defendant's ability to defend his or her rights." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 (2d Cir.

8

2012).  Here, the court accommodated Ressler by scheduling his deposition last.  It considered the possible prejudice to Mr. Ressler but ultimately concluded that a stay was inappropriate because it was not necessary to protect Ressler's Fifth Amendment rights and it would further delay a discovery process that had already been significantly delayed.  This was not an abuse of discretion.

The final two issues both relate to the calculation of damages.  The district court used Ashley Reed's revenues from selling Fendi-branded products as a proxy for its profit and did not subtract any of the costs Ashley Reed might have expended in acquiring the bags or operating its business.  Ashley Reed argues that this was error.  However, a defendant bears the burden to prove any "deductions" from its gross revenue in calculating profits, *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 7 (2d Cir. 1989), and Ashley Reed failed to present any specific evidence of its costs.  Therefore, the district court correctly declined to deduct any of Ashley Reed's purported costs.

On cross-appeal, Fendi contends that it was entitled to recover Ashley Reed's profits from 2000 to 2006 but that the district court's award only covered 2005 and 2006.  We agree that the damage award seems facially inconsistent with the court's apparent conclusion that Fendi had proven infringement during the entire 2001 to 2006 period.  The district court has the discretion to award profits "subject to the principles of equity," 15 U.S.C. § 1117(a), and therefore could decide to award Fendi less than Ashley Reed's total profits from 2001 to 2006 if it believed that was the equitable result. The district court may have believed that this was the case, but, if so, it did not explain its reasoning even after the magistrate judge pointed out the apparent discrepancy.  Under these circumstances, we vacate the current damage award and

9

remand to the district court for a determination in the first instance of whether it would be

equitable to award damages only for 2005 and 2006.[4]

        For the reasons stated herein, the district court's decision is **AFFIRMED IN PART**,

**VACATED IN PART**, and **REMANDED**.

                                      FOR THE COURT:
                                      CATHERINE O'HAGAN WOLFE, CLERK

---

[4] As noted above, we assume that the district court's judgment covered the 2001 to 2006 period and not the year 2000. However, even if the district court determines that the relevant period should begin in 2000, the court must also consider whether Fendi would be entitled to damages for that period given that the cease and desist letter was not sent until 2001 and, therefore, Ashley Reed may not have been on notice of its possible infringement.

10