## UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,

v.

## ASHLEY REED TRADING, INC., James Ressler, Scott Ressler, Fendi Adele S.r.l., Fendi S.r.l., Fendi North America, Inc., Burlington Coat Factory Warehouse Corp. and Cohoes Fashions, Inc., Defendants.

### No. 11 Civ. 4782(RMB).

United States District Court, S.D. New York.

Signed Aug. 20, 2014.

---

Robert Jeremiah Tracy, Stefanie Robin Munsky, Clifton Budd & DeMaria, LLP, New York, NY, for Plaintiff.

James Ressler, New York, NY, pro se.

Michele A. Daitz, Flowers & O'Brien, LLC, Hoboken, NJ, Lawrence Figowe Morrison, The Morrison Law Offices, P.C., Richard L. Mattiaccio, Squire Patton Boggs (U.S.) L.L.P., New York, NY, for Defendants.

## DECISION & ORDER

RICHARD M. BERMAN, District Judge.

## I. Introduction

On July 12, 2011, Plaintiff United States Fidelity and Guaranty Company ("USF & G") filed a complaint against Defendants Ashley Reed Inc. ("Ashley Reed"), Scott Ressler, James Ressler (collectively, the "Ashley Reed Defendants"), Fendi Adele, S.r.l., Fendi S.r.l, and Fendi North America, Inc. (collectively, "Fendi"), seeking a declaratory judgment that three liability insurance policies issued by USF & G to Ashley Reed between 2003 and 2006 (the "Insurance Policies" or "Policies") do not obligate USF & G to indemnify the Ashley Reed Defendants for the judgment entered by this Court against them on April 26, 2013 in the action entitled *Fendi Adele, S.r.l., et al. v. Ashley Reed Trading Inc., et al.* No. 06–CV–0243 (the "Fendi Action"). (*See* Compl., dated July 12, 2011.) [1]

On September 28, 2011, and October 20, 2011, respectively, the Ashley Reed Defendants (and Fendi) filed counterclaims seeking indemnification under the Policies for the judgment in the Fendi Action. (*See* Answer and Counterclaims, dated September 28, 2011 (Dkt. # 17); Amended Answer and Counterclaims, dated October 20, 2011 (Dkt. # 28).) Defendant James Ressler also asserted a counterclaim seeking damages for USF & G's alleged bad faith refusal to settle the Fendi Action. (*See* Amended Answer and Counterclaims, dated July 23, 2013 (Dkt. # 84).)

On May 10, 2013, the Court permitted Burlington Coat Factory Warehouse Corp. and Cohoes Fashions, Inc. (collectively, "BCF", and, together with the Ashley Reed Defendants and Fendi, "Defendants") to intervene in this action as defendants and counterclaimants. (*See* Order, dated May 10, 2013 (Dkt. # 69).) On May 17, 2013, BCF filed a counterclaim against USF & G seeking indemnification under the Policies for a judgment entered by United States District Judge Leonard B. Sand against the Ashley Reed Defendants on April 5, 2012 in an action entitled *Fendi S.R.L. v. Burlington Coat Factory Warehouse Corp.,* No. 06–CV–0085 (LBS) (MHD) (the "BCF Action").[2]

On January 16, 2014, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing, among other things, that: (1) the Insurance Policies should provide coverage for

---

1. The Court assumes familiarity with the Fendi Action.

2. The Court assumes familiarity with the BCF Action.

the judgments in the Fendi and BCF Actions because the Ashley Reed Defendants' acts of trademark infringement "clearly constitute 'advertising' as defined in the Policies," and "[t]he award of a trademark infringer's profits is an award of 'damages'"; and (2) "[n]either the [Policies'] Knowledge of Falsity Exclusion nor the First Publication Exclusion excludes 'advertising injury' coverage under subparagraph (c) [of the Policies]." (Joint Mem. of Law in Supp. of Defs.' and Intervening Defs.' Mot. for Summ. J., dated Jan. 9, 2014 ("Defs. Mem."), at 9–10, 23, 24–25.)

On February 10, 2014, USF & G filed an opposition and cross-motion for summary judgment, arguing, among other things, that: (1) the Insurance Policies' coverage for "advertising injury" does not apply to the judgments in the Fendi and BCF Actions because "no sums were awarded based on any Fendi injury arising from the [Ashley Reed] Defendants' advertising of the infringing goods" and because "the disgorgement of profits and the trebling thereof awarded in the [Fendi] Action does not constitute an award of 'damages' under the USF & G Policies"; (2) the Policies' "known falsity" and "prior publication" exclusions apply "since it is undisputed that the [Ashley Reed] Defendants were willfully counterfeiting Fendi-branded goods" and were doing so "for years before the first USF & G Policy commenced"; and (3) Defendant James Ressler's counterclaim against USF & G should be dismissed because "nowhere in the record is there any suggestion that USF & G controlled how the [Fendi] Action was to be defended, chose what defenses to assert, or whether the [Ashley Reed] Defendants could settle the [A]ction," and because,

"[u]nder New York law, it has been recognized that bad faith cannot be established when the insurer has an arguable basis for denying coverage." (Pl.'s Opp'n to Defs.' Mot. for Summ. J. and in support of Pl.'s Cross–Mot. for Summ. J., dated Feb. 4, 2014 ("Pl. Opp'n"), at 5, 9, 20, 31–32 (quotations omitted).)

On February 27, 2014, Defendants filed a reply. (*See* Joint Reply Mem. of Law in Supp. of Defs.' and Intervening Defs.' Mot for Summ. J. and in Opposition to Pl.'s Cross–Mot., dated Feb. 21, 2014. ("Defs. Reply").) On March 12, 2014, USF & G filed a reply. (*See* Pl.'s Reply Mem. of Law in Supp. of Pl.'s Cross–Mot. for Summ. J., dated March 7, 2014 ("Pl. Reply").) Oral argument was held on July 30, 2014. (*See* Hr'g Tr., dated July 30, 2014.)

**For the reasons set forth below, the Court denies Defendants' joint motion for summary judgment, and grants USF & G's cross-motion for summary judgment.[3]**

## II. Background

The following facts are undisputed except as otherwise noted.

Plaintiff USF & G is an insurance company engaged in providing commercial, property and liability insurance products and services. Defendant Ashley Reed is a New York company engaged in the purchase and sale of off-price branded handbags and other luxury goods in New York and elsewhere. Defendants Scott Ressler and James Ressler are the President and Vice President, respectively, of Ashley Reed. Defendant Fendi is a manufacturer of luxury handbags, shoulder bags, purses,

---

**3.** Any issues raised by the parties not specifically addressed herein were considered by the Court on the merits and rejected.

The parties agree that New York law controls the disposition of their claims. *See Fed. Ins. Co. v. Am. Home Assurance Co.,* 639 F.3d 557, 566 (2d Cir.2011).

wallets and other items, and is the owner of federally-registered trademarks associated with its products. Defendant BCF is a corporation engaged in the sale of apparel. (Defs.' Statement Pursuant to Local Rule 56.1, dated Jan. 9, 2014 ("Defs. 56.1"), ¶¶ 34–41; Pl.'s Resp. to Defs.' Local Rule 56.1 Statement, dated Feb. 4, 2014 ("Pl. 56.1 Resp."), ¶¶ 34–41.)

### The Fendi Action

On January 12, 2006, Fendi filed a complaint against the Ashley Reed Defendants (the "Fendi Complaint") alleging trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 & 1125, based upon the Ashley Reed Defendants' "sale and offering for sale of goods of counterfeits of Fendi's registered trademarks." (*See* Compl. dated Jan. 11, 2006 (Ex. 1 to Decl. of Victor Genecin, dated Jan. 9, 2014 ("Genecin Decl.")), ¶¶ 47, 60, 76.) Fendi sought damages and an accounting of the Ashley Reed Defendants' profits pursuant to 25 U.S.C. § 1117(a), and trebling pursuant to 25 U.S.C. § 1117(b), on the grounds that Ashley Reed Defendants intentionally used the Fendi trademarks "with knowledge that such marks were counterfeit marks." (*Id.* ¶¶ 59–60.)

On February 16, 2010, the Court granted summary judgment in favor of Fendi, finding that "Defendants sold counterfeit merchandise bearing one or more of the Fendi Marks," in violation of the Lanham Act. (Decision and Order, dated Feb. 16, 2010 (Ex. 16 to Genecin Decl.) ("February 16 Decision"), at 13; *See* Defs. 56.1, ¶ 14.) On January 4, 2013, the United States Court of Appeals for the Second Circuit affirmed the Court's holding that the Ashley Reed Defendants were liable for trademark infringement "for the entire 2001 to 2006 period." *Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.,* 507 Fed.Appx. 26, 30 (2d Cir.2013). "[T]he district court correctly concluded that Ashley Reed's in-fringement was willful as a matter of law." *Id.* at 31–32.

On April 22, 2013, the Court issued an Order awarding Fendi $29,855,043, which was three times the amount of the Ashley Reed Defendants' (counterfeit) sales from 2001 through 2006, pursuant to 25 U.S.C. § 1117(a) and (b). (Corrected Order, dated April 22, 2013 (Ex. 15 to Genecin Decl.).) The Court entered judgment for this amount on April 26, 2013. (Judgment # 13,0819, dated April 26, 2013 (Ex. 2 to Genecin Decl.).)

### The BCF Action

On January 5, 2006, Fendi filed a lawsuit in the Southern District of New York against BCF alleging trademark infringement based upon BCF's sale of counterfeit Fendi products. (*See* Amended Complaint, dated Jan. 20, 2006 (Ex. 7 to Genecin Decl.); Pl.'s Statement Pursuant to Local Rule 56.1, dated Feb. 21, 2014 ("Pl. 56.1"), ¶ 51.) In a Memorandum and Order, dated February 8, 2010, District Judge Leonard B. Sand granted Fendi's motion for summary judgment on the issue of liability, finding BCF liable for the "sale of counterfeit [Fendi] goods," in violation of the Lanham Act, 15 U.S.C. §§ 1114 & 1125. (Memorandum and Order, dated Feb. 8, 2010 (Ex. 9 to Genecin Decl.), at 11–16, 20.) The Court also found that Ashley Reed, which had sold the counterfeit Fendi products to BCF in the first instance, was required to indemnify BCF because it had "made a promise as to the authenticity of the goods," and BCF "would not be subject to the instant trademark infringement ... actions but for [Ashley Reed's] breach of this warranty." (*Id.* at 26.) Fendi and BCF subsequently settled as to the amount owed by BCF. On April 5, 2012, the Court entered a judgment requiring Ashley Reed to indemnify BCF in the amount of $248,257.14. (Judg-

ment # 12,0550, dated April 5, 2012 (Ex. 10 to Genecin Decl.).)[4]

**The Insurance Policies**

As noted, Defendants seek a declaratory judgment requiring USF & G to indemnify the Ashley Reed Defendants under liability insurance policies covering the period February 8, 2003 to February 8, 2004 (the "2003 Policy"); the period February 8, 2004 to February 8, 2005 (the "2004 Policy"); and the period February 8, 2005 to February 8, 2006 (the "2005 Policy"). (Defs. 56.1, ¶¶ 7–10.)[5] Defendants seek coverage for the awards in the Fendi and BCF Actions under the Policies' provisions relating to "advertising injury." (*Id.* ¶¶ 18, 66–67, 91.)

The Policies state, in relevant part, the following:

> We [USF & G] will pay those sums that the insured becomes legally obligated to pay as damages because of ... "advertising injury" to which this insurance applies.

(Ex. 12 to Genecin Decl. ("2003 Policy"), at P00091; Ex. 13 to Genecin Decl. ("2004 Policy") at P00669.) "Advertising Injury" is defined as "injury arising out of one or more of the following offenses":

   a. Oral or written publication of material that slanders or libels a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. The use of another's advertising idea in your "advertising";

   d. Infringement of another's copyright, trade dress or slogan in your "advertising."

(2003 Policy at P00108; 2004 Policy at P00686.)[6]

The Insurance Policies also contain exclusions, as follows:

   (1) [Advertising injury] [a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2) [Advertising injury] [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

(2003 Policy at P00097; 2004 Policy at P00675.)

## III. Legal Standard

Summary judgment should be granted where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 559 Fed. Appx. 15, 17 (2d Cir.2014). A court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.2011) (internal quotation marks omitted). When considering cross-motions for

---

**4.** This amount reflected BCF's profits from the sale of counterfeit goods that it had purchased from Ashley Reed, as well as Fendi's costs and attorneys' fees, BCF's costs and attorneys' fees, and prejudgment interest. *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 867 F.Supp.2d 427, 438 (S.D.N.Y.2012).

**5.** Although the 2005 Policy contained coverage language different from the language con-

tained in the 2003 and 2004 Policies, the parties have stipulated that the 2004 Policy's terms and conditions remained in effect for the 2005 Policy Year. (Defs. 56.1, ¶ 10.)

**6.** The Insurance Policies define the term "advertising" as "attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business." (2003 Policy at P00108; 2004 Policy at P00686.)

summary judgment, the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation,* 311 F.3d 534, 543 (2d Cir.2002) (citation omitted).

An insurer's duty to indemnify arises "only if the claim for which the insured has been judged liable lies within the policy's coverage." *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 115 (2d Cir.2005) (citing *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.,* 91 N.Y.2d 169, 178, 667 N.Y.S.2d 982, 690 N.E.2d 866 (1997)). While "[t]he duty to defend is measured against the allegations of pleadings ... the duty to pay is determined by the actual basis for the insured's liability to a third person." *Servidone Const. Corp. v. Sec. Ins. Co. of Hartford,* 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985); *see Atl. Mut. Ins. Co. v. Terk Techs. Corp.,* 309 A.D.2d 22, 28, 763 N.Y.S.2d 56 (1st Dep't 2003).

"The burden to establish coverage and a duty to indemnify lies with the insured." *Stout v. 1 E. 66th Street Corp.,* 90 A.D.3d 898, 935 N.Y.S.2d 49, 55 (2d Dep't 2011). The burden to prove the applicability of a policy's exclusion lies with the insurer. *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.,* 98 N.Y.2d 208, 218, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002).

## IV. Analysis

### (1) Meaning of "Advertising Injury"

Defendants argue that the awards in the Fendi and BCF Actions fall under the Insurance Policies' coverage for "damages because of ... 'advertising injury.'" (Defs. 56.1, ¶¶ 67, 91; *see* Defs. Mem. at 3–14, 24—25). USF & G counters (persuasively) that coverage for "advertising injury" does not apply because no sums were awarded which were "based on any Fendi injury arising from the [Ashley Reed] Defendants' advertising of the infringing goods." (Pl. Opp'n. at 9, 20.) USF & G points out correctly that the awards came about as a result of the Ashley Reed Defendants (and BCF's) willful sale of counterfeit Fendi products. USF & G also contends that "the disgorgement of profits and the trebling thereof awarded in the [Fendi] Action does not constitute an award of 'damages' under the USF & G Policies." (*Id.* at 9.)

"Under New York law, insurance policies are interpreted according to general rules of contract." *Olin Corp. v. Am. Home Assurance Co.,* 704 F.3d 89, 98 (2d Cir.2012). The Insurance Policies' "unambiguous provision[s] must be given [their] plain and ordinary meaning," *Allianz Ins. Co.,* 416 F.3d at 116 (quoting *State of New York v. Am. Mfrs. Mut. Ins. Co.,* 188 A.D.2d 152, 593 N.Y.S.2d 885, 886 (3d Dep't 1993)), and the Policies "should be construed so as to give full meaning and effect to all of [their] provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir.2005) (internal punctuation omitted). Any interpretation of an insurance policy that "has the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible." *Olin Corp.,* 704 F.3d at 99 (citation omitted) (ellipses in original).

The Policies provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of ... 'advertising injury.'" (2003 Policy at P00097.) "Advertising injury" refers to four enumerated categories of offenses, only one of which is applicable to Defendants' indemnification claim, namely "[t]he use of another's advertising idea in your

'advertising.'" (Defs. 56.1, ¶ 91.)[7] Accordingly, in order to prevail in their claim for indemnification, Defendants would have to establish that the Ashley Reed Defendants' use of the Fendi trademarks occurred in their advertising, *i.e.*, in the Ashley Reed Defendants' efforts to "attract[ ] the attention of others." *See Bridge Metal Indus.*, 559 Fed.Appx. at 19 ("[T]he claimed [advertising] injury must both arise out of an offense occurring in the course of the insured's 'advertising activities' and constitute one of the enumerated offenses." (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 303, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989))).[8]

■ Defendants have failed to meet their burden of demonstrating coverage under the Policies because the Ashley Reed Defendants' liability in the Fendi (and BCF) Actions was not based upon the "advertising" of counterfeit Fendi products. Rather, their liability was premised upon their "offering for sale and selling certain [counterfeit] fashion accessories." (Defs.56.1, ¶ 14.) As the Second Circuit has held, "[a] complaint does not claim an advertising injury if it alleges only the manufacture, importation, and sale of infringing goods without claiming harm arising from advertising." *Bridge Metal Industries*, 559 Fed.Appx. at 19; *see Jerry Madison Enters., Inc. v. Grasant Mfg. Co.*, No. 89 CIV. 2346(MBM), 1990 WL 13290,

at *4 (S.D.N.Y. Feb. 14, 1990) (where "Plaintiff directs its copyright infringement claim solely against defendant's sale and manufacture of the jewelry"); *Elite Brands, Inc. v. Penn. Gen. Ins.*, No. 02–CV–5623, 2004 WL 1945732, at *5 (S.D.N.Y. Sept. 2, 2004) (where "the claims, evidence and proposed findings relate to importation and sales of allegedly infringing merchandise") *aff'd*, 164 Fed. Appx. 60 (2d Cir.2006). The Second Circuit has also distinguished between the sale of infringing products and the advertisement of such products in the context of trademark infringement. *See Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir.2006).

In this case, the basis for the insured's liability was the sale—not the advertising—of counterfeit Fendi products, and there are no grounds for indemnification under the Policies. *Allianz Ins. Co.*, 416 F.3d at 115. The Ashley Reed Defendants' liability in the Fendi Action was based upon their "offering for sale and selling certain fashion accessories." (Defs. 56.1, ¶ 14.) And, Defendants concede that "the factual basis underpinning [BCF's] judgment against Ashley Reed rests on the same core set of facts ... underpinning Fendi's claims." (Defs. Mem. at 24.)[9] Neither the Fendi Complaint nor the complaint in the BCF Action alleged any activity relating to advertising; the allegations related solely to "the sale and offering for

---

7. The other three categories are: (1) "Oral or written publication of material that slanders or libels a person's or organization's goods, products, or services"; (2) "Oral or written publication of material that violates a person's right of privacy"; and (3) "Infringement of another's copyright, trade dress or slogan in your 'advertising.'" (2003 Policy at P00108.)

8. USF & G does not dispute that a trademark constitutes an "advertising idea" under the Policies. (*See* Defs. Mem. at 5.)

9. In resolving the liability of the Ashley Reed Defendants in the Fendi and BCF Actions, the Court was not presented with evidence regarding the Ashley Reed Defendants' attempts to market the products at issue or otherwise attract customers to those goods. (*See* Mem. of Law in Supp. of BCF's Mot. for Summ. J., dated Feb. 27, 2009 (Ex. 8 to Genecin Decl.); Mem. of Law in Supp. of Fendi's Mot. for Summ. J., dated Feb. 27, 2009 (Dkt. # 88).)

sale of goods of counterfeits of Fendi's registered trademarks." (Fendi Compl. ¶¶ 47, 60, 76; *see* Amended Complaint, dated Jan. 20, 2006 (Ex. 7 to Genecin Decl.), at ¶¶ 37–44.) And, Defendants do not dispute that the monetary amount of the awards in the Fendi and BCF Actions was based upon profits obtained from the sale of counterfeit goods—not from any advertising activity. (*See* Defs. 56.1, ¶¶ 15–17; Defs. Mem. at 2.)

Defendants argue unpersuasively that "a trademark infringement claim under the Lanham Act inherently and necessarily implicates advertising" (Defs. Mem. at 6), and they cite to district court cases for the broad proposition that "it is not possible to allege a claim for trademark, servicemark or trade name infringement without the infringing mark being used to identify the goods or services to the public." (*Id.* at 5–6 (quoting *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Mass. Bay Ins. Co.*, 818 F.Supp. 553 (W.D.N.Y.1993)).) "[T]his use qualifies as advertising" (*id.*), and a "consumer product whose design incorporates its maker's trademark . . . is an advertisement for itself." (*Id.* at 9.)

Defendants miss the mark. For one thing, the idea that trademark infringement "necessarily implicates advertising" is negated by the Lanham Act's definition of infringement, which distinguishes between the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a) (emphasis added); *see 1–800 Contacts, Inc. v. WhenU.Com. Inc.*, 414 F.3d 400, 406–07 (2d Cir.2005) ("In order to prevail on a trademark infringement claim for registered trademarks . . . a plaintiff must es-

tablish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services . . . (5), without the plaintiff's consent." (emphasis added)).

Second, Defendants' theory conflicts with the plain language of the Insurance Policies, which, as noted, define advertising injury as "[t]he use of another's advertising idea in your 'advertising.'" If Defendants were correct that any use of a trademark constitutes advertising, the phrase "in your advertising" would be meaningless. *Olin Corp.*, 704 F.3d at 99 ("Any interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." (internal quotation marks omitted)). The Policies' language clearly contemplates that the unauthorized use of a trademark, without more, does not constitute "advertising injury," *i.e.*, in the absence of a separate and distinct act of advertising.

Third, the district court cases cited by Defendants are inapposite because the insurance policies in those cases defined "advertising injury" as the "[m]isappropriation of advertising ideas or style of doing business." *E.g.*, *J.A. Brundage*, 818 F.Supp. at 556. This definition is significantly broader than the definition of advertising injury contained in the Insurance Policies, *i.e.*, "[t]he use of another's advertising idea in your 'advertising.'"

In sum, because the Ashley Reed Defendants' liability in the Fendi and BCF Actions was based upon the sale of counterfeit Fendi products, and not upon any "advertising injury," the Court concludes that USF & G is not required to indemnify the Ashley Reed Defendants for the

awards issued in those Actions.[10]

### (2) Exclusion for "Prior Publication"

██ Even assuming, *arguendo*, that the awards in the Fendi and BCF Actions could be construed as "damages because of . . . advertising injury," the Court would likely find against Defendants based upon the Policies' exclusion for "[a]dvertising [i]njury . . . arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (2003 Policy at P00097; 2004 Policy at P00675.). It is undisputed that the counterfeit sales at issue in the BCF and Fendi Actions took place before the coverage period of the 2003 Policy, *i.e.*, prior to February 8, 2003. (Defs.' Resp. to Pl.'s Local Rule 56.1 Statement, dated Feb. 21, 2014 ("Defs. 56.1 Resp."), ¶ 62.) *Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, 507 Fed.Appx. at 30 ("The district court did not err in resolving Ashley Reed's liability for the entire 2001 to 2006 period on summary judgment."). And, assuming *arguendo* that the Court were to find that such sales constituted "advertising," *i.e.*, "attracting the attention of others," it would likely also find that such acts of advertising constituted "publication." *See Fed. Ins. Co. v. Learning Group Int'l Inc.*, No. 93–56615, 1995 WL 309047, at *2 (9th Cir. May 19, 1995) ("An advertising injury will by definition be predicated on an offending publication.").

Defendants argue that the Policies' prior publication exclusion applies only to the (two) categories of advertising injury which incorporate the phrase "oral or written publication," *i.e.*, "[o]ral or written publication of material that slanders or libels a person's or organization's goods, products, or services" and "[o]ral or written publication of material that violates a person's right of privacy." (Defs. Mem. at 21–22.) "The trademark infringement that constituted the 'advertising injury' caused by [the Ashley Reed Defendants] clearly did not arise from publication of material that was libelous, slanderous, disparaging or that violated anyone's right to privacy." (*Id.* at 22.) Plaintiffs respond that Defendants "ignore . . . the plain language of the USF & G Policies which explicitly state that the exclusion applies to 'advertising injury,' which is expressly defined as including one or more of four listed offenses." (Pl. Opp'n. at 25.)

The Court finds that there is no basis for limiting the Policies' prior publication exclusion to two of the four "advertising injury" offenses. The prior publication exclusion unambiguously applies to "advertising injury" and encompasses "oral or written publication of material" without regard to whether such published material was libelous, slanderous, disparaging, or violative of the right to privacy. Defendants' argument is contrary to the exclusion's plain meaning, and conflicts with case law within and outside this Circuit. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, No. 98 CIV. 6454(HB), 1999 WL 1072819, at *1 (S.D.N.Y. Nov. 29, 1999) ("[T]he plaintiffs' argument that the 'prior acts' exclusion here applies only to slander, libel and invasion of privacy is meritless."); *Learning Group Int'l, Inc.*, 1995 WL 309047, at *2 ("The language of the [prior acts] exclusion logically applies to any and all advertising injuries, regardless of how those

---

10. Because the Court concludes that there was no "advertising injury" under the Policies, the Court need not decide the second coverage issue raised by USF & G, *i.e.*, whether the disgorgement of a trademark infringer's profits constitutes "damages" under the Insurance Policies. (Pl. Opp'n. at 9–13.) The Court also need not decide whether the disgorgement of an infringer's profits is uninsurable as a matter of New York public policy. (*Id.* at 5.)

injuries are specifically described under the policy.").

### (3) Alleged Refusal to Settle Claim

USF & G argues that James Ressler's counterclaim for bad faith refusal to settle the Fendi Action should be dismissed because "nowhere in the record is there any suggestion that USF & G controlled how the [Fendi] Action was to be defended, chose what defenses to assert, or whether the [Ashley Reed] Defendants could settle the Action," and because, "[u]nder New York law ... bad faith cannot be established when the insurer has an arguable basis for denying coverage." (Pl. Opp'n. at 31–32.) In response, Defendants argue that "USF & G did not set forth an arguable basis for denial [of coverage] at the time it reserved its rights in 2007" and "the record is replete ... with evidence that USF & G controlled the defense, actively supervising even the minutiae of the litigation." (Defs. Reply at 10–11.)

The Court concludes that summary judgment should be granted in favor of USF & G with respect to Defendant Ressler's counterclaim. For one thing, because the Policies unambiguously preclude coverage for the award in the Fendi Action (*see* Section IV.(i) and (ii), above), Defendant Ressler cannot establish that USF & G acted in bad faith by refusing to settle that dispute. *Zurich Ins. Co. v. Texasgulf, Inc.*, 233 A.D.2d 180, 649 N.Y.S.2d 153, 153 (1st Dep't 1996) ("[A] claim of bad faith [refusal to settle] must be predicated on the existence of coverage of the loss in question."). Second, there is no evidence that USF & G exercised "exclusive control" over the (potential) settlement of the Fendi Action, as is required to prove a claim for bad faith refusal to settle. *See CBLPath Inc. v. Lexington Ins. Co.*, 73 A.D.3d 829, 830, 900 N.Y.S.2d 462 (2d Dep't 2010). In fact, it is undisputed that,

in the Fendi Action, Defendant James Ressler selected his own counsel and that "[a]t no time did USF & G ever tell any of the [Ashley Reed Defendants] that they could not settle the claim with their own funds." (Defs. 56.1 Resp. at ¶¶ 36–37, 44).

## V. Conclusion and Order

For the foregoing reasons, Defendants' motion for summary judgment [# 98] is denied, and USF & G's cross-motion for summary judgment [# 108] is granted. The Clerk of Court is respectfully requested to close this case.